**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs,*
Benjamin Karter and Diego Ornelas

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BENJAMIN KARTER and DIEGO ORNELAS , Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DUDE PRODUCTS, INC.,**<br><br>**Defendant.** | Case No.: '25CV663  RSH KSC<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>3) **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*;**<br>4) **BREACH OF EXPRESS WARRANTY;**<br>5) **UNJUST ENRICHMENT;**<br>6) **NEGLIGENT MISREPRESENTATION; AND,**<br>7) **INTENTIONAL MISREPRESENTATION.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.      Plaintiffs Benjamin Karter ("Plaintiff Karter") and Diego Ornelas ("Plaintiff Ornelas") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the unlawful actions of defendant Defendant Dude Products, Inc. d/b/a Dude Wipes ("Dude" or "Defendant") concerning the unlawful, unfair and deceptive labeling of Defendant's personal hygiene products, with the designation and representation that the products are/were of U.S. origin without clear and adequate qualification of the foreign ingredients and components containted therein, as required by federal rules and California laws.

2.      The misrepresented products are sold through various channels, including, but not limited to, direct-to-consumer sales on the Defendant's website, third-party platforms such as Amazon.com ("Amazon"), and third-party merchants operating brick-and-mortar stores including Walmart, Targer, Kroger and others.

3.      Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

4.      As stated by the California Supreme Court in *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328-29 (2011):

> **Simply stated: labels matter.** The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source. . .In particular . . . **the "Made in U.S.A." label matters**. A range of motivations may fuel this preference, from desire to support domestic jobs or labor conditions, to simply patriotism. The Legislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent "Made in America"

representations. (Cal. Bus & Prof. Code section 17533.7; see also Cal. Civ. Code § 1770, subd. (a)(4) (prohibiting deceptive representations. Of geographic origin)). The objective of section 17533.7 "is to protect consumers from being misled when they purchase products in the belief that they are advancing the interest of the United States and the industries and workers. . ." (emphasis added).

5.      Defendant labeled its products with the unqualified representation that they are "Assembled in USA," (or another synonomous U.S. origin phrase) next to a picture of the United States flag either on the Principal Display Panel ("PDP") or another prominent and conspicuous location on the product label. This unqualified, express U.S. origin representation was printed on all or nearly all products manufactured, sold or distributed by Defendant, including the products purchased by Plaintiffs. Furthermore, Defendant represented its products as "USA-Made" on its website until at least October 2024.[1]

6.      Below are examples of these unqualified, U.S. origin representations:





7.      Contrary to Defendant's express U.S. origin representations and its failure to clearly and aquately qualify those representations, the products purchased by Plaintiffs are composed of foreign ingredients and components.

---

[1] *See* https://web.archive.org/web/20241009061352/https://dudewipes.com/pages/education

8.    Defendant's conduct of advertising and selling deceptively labeled products bearing the representation that such products are of U.S. origin without qualification violates: (1) the Consumer Legal Remedies Act; (2) the Unfair Competition Law; (3) the False Advertising Law; (4) 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule") and constitutes (5) breach of express warranty; (6) unjust enrichment; (7) negligent misrepresentation; and (8) intentional misrepresentation.

9.    This conduct caused Plaintiffs, and other similarly situated consumers, damages, and requires restitution and injunctive relief to remedy and prevent future harm.

10.    In addition to the unqualified U.S. origin representation on the products purchased by Plaintiffs, Defendant's other products—including, but not limited to, those listed and featured on Defendant's website[2] (the "Class Products")—also displayed the same unqualified U.S. origin representation or a similar unqualified claim.[3]

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity as Plaintiffs are citizens of the State of California and Defendant is a Delaware corporation with its headquarters and principal place of business in Illinois; (2) the

---

[2] *See* https://dudewipes.com/collections/dude-wipes (last accessed on March 5, 2025)

[3] This includes any and all sizes, scents, sub-brands, variations, configurations or selling units of products manufactured and distributed by Dude and/or sold within the last four years including, but not limited to, the following non exhaustive list:

- Dude Wipes, including, but not limited to, Fragrance Free, Mint Chill, Herbal Relief, Shea Butter Smooth and Fragrance Free Camo varieties
- Dude Wipes Singles, including, but not limited to, Fragrance Free and Mint Chill varieties
- Dude Wipes Medicated

Additionally, this includes any and all other products that contain or are made with any foreign ingredients or components and represent "Assembled in USA", "USA-Made" or any derivative thereof in any of their advertising, marketing or packaging including, but not limited to, products sold in the past four years that are now discontinued. Products with multiple sizes, scents, packaging or other variations not specifically listed here are all subject to this letter.

---

amount in controversy in this matter exceeds $5 million, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

12.    Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff Ornelas resides in the County of San Diego, State of California, which is within this judicial district; (ii) a substantial part of the conduct complained of herein occurred within this judicial district; (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

13.    Plaintiff Karter is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the County of Orange, State of California.

14.    Plaintiff Ornelas is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the County of San Diego, State of California.

15.    Defendant is a corporation that is organized and exists under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois.

16.    Defendant is a manufacturer, distributor and seller of personal care products, specifically wet wipes and related items, that conducts business: a) through its website; b) through the websites of third-party vendors, including, but not limited to, Amazon, Walmart.com, Target.com and Costco.com; and c) distributes its products to be sold in brick and mortar stores including, but not limited to, Walmart, Target, Costco and elsewhere.

17.    Plaintiffs allege that at all relevant times Defendant conducted business within the State of California, in the County of San Diego, and within this judicial district.

18.    Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

## NATURE OF THE CASE

19.     Defendant is among the most well-known wet wipes companies in the United States.

20.     Since its establishment in 2012, Defendant has grown into one of the leading personal hygiene products companies in the United States, generating hundreds of millions of dollars in revenue.

21.     Given its long history in the consumer packaged goods industry, along with its vast resources and operational sophistication, it is difficult to understand how Defendant could so blatantly violate the well-established laws, rules, and regulations governing the use of U.S. origin claims or any derivative thereof.

22.     At all relevant times, Defendant made material misrepresentations regarding the Class Products.

23.     Specifically, Defendant advertised, marketed, promoted, and sold the Class Products as "Assembled in USA" without disclosing the use of foreign ingredients and components, when in fact this claim was false, unfair and deceptive.

24.     Although Defendant represented that the Class Products were of U.S. origin without qualification, the products are substantially made with ingredients and components sourced, grown, or manufactured outside the United States.

25.     Each consumer, including Plaintiffs, was exposed to the same material misrepresentations, as similar labels were placed on all Class Products sold throughout the United States, including in California.

26.     Federal rules and regulations regarding the use of "Made in the United States" claims— including any synonymous claims, whether express or implied— are well-established and clearly defined with respect to products and services.

27.     The MUSA Rule clearly defines the meaning of "Made in the United States"[4]

---

[4] *See* 16 C.F.R. § 323.1(a) ("The term **Made in the United States means any unqualified representation, *express or implied*, that a product or service**, or a specified component thereof, **is of U.S. origin**, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, ***or any other unqualified U.S.-origin claim.***") (emphasis added).

and outlines when this designation may be used without qualification. Specifically, clear and adequate qualifications must notify consumers if the good or service contains or is made with ingredients or components that are not made or sourced in the United States.[5]

28.    As a consequence of Defendant's unfair and deceptive practices, Plaintiffs and other similarly situated consumers purchased the Class Products under the false impression and in reliance upon Defendant's representations that the Class Products were of U.S. origin with ingredients and components sourced from within the United States.

29.    As a result, Plaintiffs and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the products they purchased were of U.S. origin and did not contain numerous ingredients and components from outside the United States.

30.    Despite the clearly established and well-defined federal rules regarding U.S. origin claims, Defendant falsely, unfairly and deceptively advertised, marketed and sold its products, including the products purchased by Plaintiffs, as being of U.S. origin without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

31.    Had Plaintiffs and other consumers similarly situated been made aware that the Class Products contained ingredients and components sourced from outside of the United States, they would not have purchased the Class Products.

32.    As a result of Defendant's false, unfair, and deceptive statements and/or their

---

[5] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, **it is an unfair or deceptive act or practice** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), **to label any product as Made in the United States unless** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and **all or virtually all ingredients or components of the product are made and sourced in the United States**. (emphasis added).

failure to disclose the true nature of the Class Products, along with the other conduct described herein, Plaintiffs and similarly situated consumers purchased hundreds of thousands of units of the Class Products across the United States, including in California, suffering harm, including the loss of money and/or property.

33.    Defendant's conduct regarding the labeling, marketing, and sale of the Class Products, as alleged herein, violates multiple federal and California laws, rules, and regulations, as detailed below.

34.    This action seeks, among other things, equitable relief; restitution of all amounts unlawfully retained by Defendant; and disgorgement of all ill-gotten profits resulting from Defendant's alleged wrongdoing.

### FACTUAL ALLEGATIONS

35.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

36.    At all relevant times, Defendant made material misrepresentations regarding the Class Products.

37.    Defendant produced, marketed, and advertised its products, including the products purchased by Plaintiffs, as being of U.S. origin without clear or adequate qualification.

38.    The Federal Trade Commission ("FTC") has made it clear that U.S. origin claims will be analyzed "in context," considering factors such as "terms used," "prominence," and "proximity to images."[6]

39.    Even without additional context, the "Assembled in USA" claim would still violate the MUSA Rule. However, in the case of the Class Products, this claim is

---

[6] *See* United States, Federal Trade Commission. "Made in USA Labeling Rule." 86 Fed. Reg. 37022, July 14, 2021. ("The *list of equivalents to "Made in USA" set forth in Section 323.1 is not exhaustive because the means of communicating U.S. origin are too numerous to list*. The Commission believes the *non-exhaustive list of examples given provide sufficient guidance on the scope of covered <u>express and implied claims</u>*. These examples are based on the Commission's decades of enforcement experience addressing MUSA claims. For other claims, the Commission <u>*will analyze them in context*</u>, including the <u>*terms used*</u>, their <u>*prominence*</u>, and their <u>*proximity to images*</u> and other text." at p. 37028) (emphasis added).

accompanied by highly impactful and deliberate contextual elements, clearly designed to convey—albeit unfairly and deceptively—an unqualified American origin.

40.    Directly next to the text stating "Assembled in USA," Defendant includes a prominent, full color image of the United States flag, further reinforcing Defendants' intent to convey that the Class Products and their ingredients are of U.S. origin.

41.    Each of these representations, on its own, is sufficient to be considered a claim of American origin. However, taken together, they form an indisputable, unqualified express claim of American origin—one that is false, unfair, and deceptive, given that the Class Products are made with foreign ingredients and components.

42.    Not only is the intent of the MUSA Rule's illustrative list of verbs clear on its face, but the non-exhaustive nature of the list is further supported by the FTC's commentary, which confirms its purpose: to capture verbs that are synonymous with "made" in a non-exhaustive manner.

43.    It is clear that the term "assembled" need not be specifically enumerated in the MUSA Rule for Defendant's unqualified use of "Assembled in USA" on the Class Products, along with other unqualified U.S. origin representations, to violate the MUSA Rule.

44.    The terms "assembled" and "made" share a synonymous relationship.[7]

45.    Despite their unqualified U.S. origin representations, the Class Products are made using ingredients and components that are neither domestically grown, sourced, nor produced.

46.    Regardless of where the Defendant placed its unqualified U.S. origin representations on the Class Products, these representations would still violate the

---

[7] *See* https://www.merriam-webster.com/thesaurus/assembled (The term "made" is listed as a "highly relevant" synonym for "assembled.")

MUSA Rule as discussed above.

47.     However, in the case of the Class Products, the claim is highly impactful and intentionally placed on the PDP—the most prominent and conspicuous location for a consumer packaged goods company to present a claim.

48.     A product's PDP is the part of the product that faces the consumer when placed on a shelf or displayed on a website, allowing the consumer to view its claims without needing to turn the product around.

49.     Consumer packaged goods companies typically place what they consider to be their most important and highest-value selling points on a product's PDP.

50.     In the case of the Class Products, the Defendant's "Assembled in USA" claim is prominently displayed on the product's PDP, standing alone in contrasting text alongside a full-color United States flag icon. This bold and unqualified presentation reinforces the Defendant's intent to convey that both the Class Products and their ingredients originate from the United States.

51.     Below are non-exhaustive examples of the aforementioned representation that appears on the packaging and marketing of the Class Products:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   52.    This representation is prominently displayed in the same location on the

20   packaging of all Class Products or, in some cases, in another conspicuous location

21   on the product packaging.

22   53.    As a result of the unqualified U.S. origin representations on the Class

23   Products' PDPs, online retailers further propagated this misrepresentation through

24   their websites' product images and descriptions. Additionally, they continued to sell

25   the Class Products with unqualified U.S. origin misrepresentations on their physical

26   store shelves, where applicable.

27   54.    Many third-party retailers continue to make these misrepresentations online

28   due to the Defendant's failure to notify them of the misrepresentations that appear

1  or previously appeared on the Class Products.

2  55.    Below are non-exhaustive examples of the aforementioned representations

3  that appear on third-party retailers' websites as of the filing of this Complaint[8]:



---

[8]  *See*  https://www.walmart.com/ip/DUDE-Wipes-Unscented-XL-Flushable-Wipes-4-Flip-Top-Packs-48-Wipes-per-Pack-192-Total-Wipes/338343631?classType=VARIANT&athbdg=L1102&from=/search  (last accessed March 5, 2025)

https://www.target.com/p/dude-wipes-mint-chill-flushable-personal-wipes-eucalyptus-scent-48ct/-/A-87907981#lnk=sametab (last accessed March 5, 2025)

https://www.costco.com/dude-wipes-fragrance-free--moisturizing-xl-flushable-wipes-480-wipes.product.4000213921.html (last accessed March 5, 2025)





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








56.     As a result of the unqualified U.S. origin claims on the Class Products' packaging, consumers have been misled for years, leading to both initial and repeat purchases of products they believed were made in the United States with ingredients and components sourced from the U.S.

57.     Despite the prominent and unqualified claim that the Class Products were of U.S. origin, they are made with foreign ingredients and components, a fact that is not properly disclosed on the label, as required by the MUSA Rule and California law.

58.     For example, the products purchased by Plaintiffs are produced using packaging that is not from the United States.

59.     Defendant's products, including those purchased by Plaintiffs, are produced

using other foreign ingredients and components, including but not limited to, tea tree oil[9] and shea butter.[10]

60.    By failing to clearly and adequately disclose the use of foreign ingredients and components, Defendant unfairly and deceptively misrepresented the Class Products as being of purely U.S. origin.

61.    Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

62.    Most consumers have limited awareness that products—along with their ingredients and components—labeled as being of U.S. origin may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

63.    American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts.

64.    In addition to causing financial harm to consumers, Defendant's actions also disadvantaged its competitors, who properly qualified their U.S. origin claims whenever such claims were made.

65.    Below are non-exhaustive examples of products from the Defendant's competitors that clearly and adequately qualify their U.S. origin claims:

---

[9] *See* https://en.wikipedia.org/wiki/Melaleuca_alternifolia ("Endemic to Australia, it occurs in southeast Queensland and the north coast and adjacent ranges of New South Wales where it grows along streams and on swampy flats, and is often the dominant species where it occurs.")

[10] *See* https://en.wikipedia.org/wiki/Vitellaria (The distribution map shows that the shea tree grows exclusively in Africa.)









66.    Defendant either charged a premium for the Class Products compared to its

competitors or gained a competitive advantage by having the Class Products chosen

over others based on false, unqualified U.S. origin claims. Federal rules and California laws are designed to protect consumers from such false representations and predatory conduct.

### FACTS SPECIFIC TO PLAINTIFF BENJAMIN KARTER

67.    On or about December 16, 2022, Plaintiff Karter searched online while at his home in Irvine, California looking to purchase personal hygiene products that were made in the United States with ingredients sourced from the United States.

68.    While browsing various products available for purchase online, Plaintiff Karter reviewed information, marketing materials, and images of Defendant's Fragrance-Free Wet Wipes (48 count). The product's PDP featured an "Assembled in USA" claim alongside a full-color icon of the United States flag, without any qualification, despite the product being made with foreign ingredients and components. Upon information and belief, the product's description on Amazon also claimed that it was "Assembled in USA" without any qualification.

69.    Relying on the unqualified "Assembled in USA" representation on the product, as any reasonable consumer would, and seeking to purchase a product made in the United States with domestic ingredients and components—especially since it is a personal hygiene product—Plaintiff Karter purchased the product for approximately $3.99 (excluding tax and shipping) from Amazon for his personal use.

70.    Plaintiff Karter, still believing the product was of U.S. origin and not made with foreign ingredients and components, purchased the product again from Amazon on April 11, 2023, for $3.99 (excluding tax and shipping). Following his Amazon purchase, Plaintiff Karter bought another of Defendant's products from Target in Irvine, California, for $1.99 (excluding tax), still believing the product was of U.S. origin.

71.    Plaintiff Karter's reliance on Defendant's unqualified U.S. origin representation was reasonable, as consumers are accustomed to seeing disclosures

like "Assembled in the USA with globally sourced materials" or similar qualified variations on product packaging—if and when such U.S. origin claims are made. When consumers encounter an unqualified "Assembled in the USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

72. Defendant's representations regarding the Class Products (including the products purchased by Plaintiff Karter) were unfair, deceptive, and misleading, as the Class Products were actually made with and/or contained ingredients or components sourced, grown, or manufactured outside the United States.

73. Accordingly, Defendant is not entitled to lawfully make unqualified representations that the products were of U.S. origin.

74. Such unqualified representations that the products purchased by Plaintiff Karter was of U.S. origin, without qualification, were material to Plaintiff Karter's decision to purchase the product.

75. Indeed, in deciding to purchase Defendant's products, Plaintiff Karter relied on the labeling, marketing, and/or advertising prepared and approved by Defendant and its agents, as disseminated through the Class Products' packaging containing the misrepresentations alleged herein.

76. Had Plaintiff Karter known that the products he purchased, the Class Products, and their ingredients were not actually of U.S. origin, he would not have purchased the products.

77. In other words, Plaintiff Karter would not have purchased Defendant's products but for the unqualified "Assembled in USA" claim on the products he purchased and Class Products.

78. As a result, Plaintiff Karter was harmed because Defendant took Plaintiff Karter's money due to its false, unqualified, unfair, and deceptive U.S. origin representations on the products he purchased and the Class Products.

79. Each time Plaintiff Karter and putative Class members purchased a Class

Product, they relied on Defendant's unqualified U.S. origin representations in their purchasing decisions, as is typical of most U.S. consumers.

80.    Consequently, Plaintiff Karter and other similarly situated consumers were deceived by Defendant's actions.

81.    Plaintiff Karter believed, at the time of purchase, that the products he purchased were of superior quality and that he was supporting U.S. jobs, the U.S. economy, the environment, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients and components, rather than ingredients sourced, grown, or made outside the United States.

82.    Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

83.    Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy. This concern is especially significant for products intended for personal use, such as personal hygiene products.

84.    Additionally, foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin counterparts.

85.    False, unqualified, unfair and deceptive representations that products are of U.S. origin reduce overall customer satisfaction compared to if such products were genuinely made in the U.S. using ingredients and components sourced, grown, or made domestically.

86.    As the Class Products, including the products purchased by Plaintiff Karter, contain foreign ingredients, they are not worth the purchase price paid by Plaintiff Karter and putative Class members.

87.    Plaintiff Karter and Class members were harmed as a result of Defendant's false, unqualified, unfair and deceptive U.S. origin representations alleged herein.

88.    This false, unfair, and deceptive advertising of the Class Products by Defendant poses an ongoing threat to consumers, as Defendant's conduct continues to this day—particularly through its third-party retailers, who presumably have not been notified to remove the Defendant's unqualified, unfair, and deceptive U.S. origin representations.

### FACTS SPECIFIC TO PLAINTIFF DIEGO ORNELAS

100.    On or about May 23, 2024, Plaintiff Ornelas searched online while at his home in Bonita, California looking to purchase wet wipe products. Plaintiff Ornelas discovered Defendant's Mint Chill Wet Wipes on Target.com, where he viewed images of the product's packaging.

101.    On the back of the packaging, Plaintiff Ornelas saw and read the "Assembled in USA" claim displayed next to a full-color image of the American flag, without any qualification or disclosure of the product's foreign ingredients or components.

102.    Relying on the unqualified U.S. origin claim, as any reasonable consumer would, and intending to purchase a product that was made in the United States with domestic ingredients and components, Plaintiff Ornelas purchased a three pack, 48 count of the product for $9.99 (excluding shipping and tax) from Target.com for his personal use.

103.    Despite Defendant's representations that the products purchased by Plaintiff Ornelas of U.S. origin without clear and adequate qualification of foreign ingredients and components, the products are made with foreign ingredients and components.

104.    Plaintiff Ornelas's reliance on Defendant's unqualified U.S. origin representation was reasonable, as consumers are accustomed to seeing disclosures like "Assembled in the USA with globally sourced materials" or similar qualified variations on product packaging-if and when such U.S. origin claims are made. When consumers encounter an unqualified "Assembled in the USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

105.   Defendant's unqualified U.S. origin representations regarding the products purchased by Plaintiff Ornelas were false, unfair, deceptive, and misleading, as the products—and all other Class Products—are, in fact, made with foreign-sourced ingredients and components.

106.   Plaintiff Ornelas would not have purchased the products had he known that the products were made with foreign-sourced ingredients or components.

107.   As a result, Plaintiff Ornelas was harmed because Defendant misrepresented the products he purchased as being of U.S. origin, without qualification, leading Plaintiff Ornelas to purchase the products under false pretenses.

108.   Each time Plaintiff Ornelas and other similarly situated consumers purchased products like the Class Products, they relied on Defendant's unqualified claims regarding the product's U.S. origin, which misled them into believing they were purchasing a product that met these criteria.

109.   Consequently, Plaintiff Ornelas and other similarly situated consumers were deceived by Defendant's actions and suffered harm as a result.

110.   Upon information and belief, the Class Products— including the ingredients and components used to produce these products—do not meet the sourcing standards that consumers would expect from products claiming to be of U.S. origin, without qualification.

111.   The false, unqualified U.S. origin claims diminished the overall value of Defendant's products for Plaintiff Ornelas and other similarly situated consumers, who believed they were purchasing a higher-quality product based on these misrepresentations.

112.   Plaintiff Ornelas would not have purchased Defendant's products at the price paid, or at all, had he known that the products did not meet the expectations set by Defendant's false, unfair and deceptive marketing claims.

113.   This false, unfair, and deceptive advertising of the Class Products by Defendant poses an ongoing threat to consumers, as Defendant's conduct continues

to this day-particularly through its third-party retailers, who presumably have not been notified to remove the Defendant's unqualified, unfair, and deceptive U.S. origin representations.

### CLASS ALLEGATIONS

89.    Plaintiffs bring this action on behalf of Plaintiffs and all others similarly situated.

90.    Plaintiffs are members of and seek to represent a Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who purchased one or more of the Class Products, within four years prior to the filing of this Complaint, that were marketed or represented as being of U.S. origin, without qualification, or any derivative thereof on the product or in its marketing materials, but which contained ingredients or components not grown, sourced or manufactured in the USA.

91.    Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

92.    Plaintiffs reserve the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

93.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiffs at this time, based on information and belief, the Class consists of thousands of individuals within California.

94.    <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- Whether the Class Products are or have been represented as being of U.S. origin without clear and adequate qualification;

- Whether Defendant negligently or intentionally misrepresented or omitted the fact that the Class Products, including the Product purchased by the Plaintiffs and other Class members, were sold illegally in California;

- Whether Defendant's conduct was "unfair" as that term is defined in the UCL;

- Whether Defendant was unjustly enriched by its unlawful, unfair and deceptive business practices;

- Whether Plaintiffs and members of the Class suffered monetary damages as a result of Defendant's conduct; and

- Whether Plaintiffs and members of the Class are entitled to injunctive relief, including public injunctive relief.

95.    <u>Typicality</u>: Plaintiffs' claims are typical of those of the Class. Both Plaintiffs and all members of the Class have been harmed by Defendant's wrongful practices. Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories. Specifically, Plaintiffs purchased one or more Class Products that were represented and/or advertised as being of U.S. origin, without clear and adequate qualification.

96.    <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of members of the Class. Plaintiffs' Counsel are competent and experienced in litigating consumer class actions. Plaintiffs have retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiffs have no adverse or

antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs' attorneys are not aware of any interests adverse or antagonistic to those of Plaintiffs and the proposed Class.

97.    <u>Predominance</u>: Defendant has engaged in a common course of conduct toward Plaintiffs and members of the Class, in that Plaintiffs and members of the Class were induced to purchase the Class Products. The common issues arising from Defendant's conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

98.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

99.    Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful, unfair and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Class Products will also likely continue to be advertised, marketed, promoted and sold in an unlawful, unfair, deceptive and misleading manner, and members of the Class will continue to be deceived, misled, harmed, and denied their rights under California law.

100.    Defendant has acted on grounds that apply generally to the Class, so that Class certification is appropriate.

1

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act ("CLRA")

### (Cal. Civ. Code § 1750, *et seq.*)

101.   Plaintiffs re-allege and incorporate by reference all paragraphs 1 through 100 of this Complaint as though fully set forth herein, and further allege as follows:

102.   California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

103.   The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia,* that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections.

104.   Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of personal hygiene products to consumers.

105.   Plaintiffs and the Class members are not sophisticated experts with independent knowledge of ingredient sourcing, product labeling and marketing practices.

106.   Plaintiffs and the Class members are California consumers who purchased Class Products for personal, family or household purposes.

107.   Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

108.   The Class Products that Plaintiffs and other Class members purchased from Defendant constitute "goods" as defined pursuant to Civil Code Section 1761(a).

109.   Plaintiffs, and the Class members, are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

110.   Each of Plaintiffs' and the Class members' purchases of Defendant's products constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

111.   Civil Code Section 1770(a)(2), (4), (5), (7) and (9) of the CLRA provides that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;
> (4) Using deceptive representations or designations of geographic origin in connection with goods or services;
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;
> (7) Representing that goods or services are of a particular standard, quality, or grade…; [and]
> (9) Advertising goods or services with intent not to sell them as advertised.

112.   Defendant failed to comply with Civil Code Section 1770(a)(2), (4), (5), (7) and (9) by marketing and representing that the Class Products are of U.S. origin, without qualification, when in fact they actually contain foreign sourced, grown or made ingredients and/or components.

113.   Plaintiffs further allege that the Defendant committed these acts with full awareness of the harm it would cause and engaged in such unfair and deceptive conduct despite this knowledge.

114.   Defendant knew or should have known that its representations about the Class Products, as described herein, violated federal regulations and state laws, including consumer protection laws, and that these statements would be relied upon by the Plaintiffs and Class members.

115.   As a direct and proximate result of Defendant's violations of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiffs and each Class member have suffered harm by paying for the Class Products, which they would not have purchased had they known the products were unlawfully, unfairly, and deceptively labeled, contained foreign ingredients.

116.   Plaintiffs and the putative Class suffered monetary harm as a result of Defendant's conduct because: (a) they would not have purchased the Class Products on the same terms had it not been for Defendant's unlawful, unfair, and deceptive actions as set forth herein; and/or (b) they paid a price premium for the Class Products or chose them over competing products due to Defendant's misrepresentations and deceptive packaging, which falsely claimed the products were of U.S. origin without qualification, despite the inclusion of foreign ingredients and components.

117.   Plaintiffs were therefore harmed because their money was taken by Defendant as a result of Defendant's false and unqualified U.S. origin representation on the labels of the Class Products.

118.   Plaintiffs and Class members reasonably relied upon Defendant's representations regarding the Class Products, and Plaintiffs and the Class reasonably expected that the Class Products would not be unlawfully labeled in a unfair, deceptive and misleading manner.

119.   Thus, Plaintiffs and the Class reasonably relied to their detriment on Defendant's unfair, deceptive and misleading representations.

120.   Pursuant to California Civil Code § 1782(a), on or about September 19, 2024, Plaintiffs sent Defendant a notice and demand for corrective action (the "CLRA

Demand") via certified mail, informing Defendant of its violations of the CLRA and demanding that they cease and desist from such violations, as well as make full restitution by refunding all monies received in connection therewith.

121.   As the alleged violations were not cured by Defendant within 30 days of the CLRA Demand and remain unaddressed on third-party retailers websites, Plaintiffs, on behalf of themselves and the Class, seek damages and attorneys' fees pursuant to California Civil Code § 1782(d).

122.   As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs and members of the Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

123.   Under Cal. Civ. Code § 1780(a) and (b), Plaintiffs and the putative Class are entitled to, and hereby seek, injunctive relief to prohibit such conduct in the future, as well as damages.

124.   Attached hereto as Exhibit A are sworn declarations from Plaintiffs pursuant to Cal. Civ. Code § 1780(d).

## <u>SECOND CAUSE OF ACTION</u>

### Violations of California's Unfair Competition Law ("UCL")

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

125.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

126.   Plaintiffs bring this claim individually and on behalf of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

127.   Plaintiffs and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

128.   California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

129.   "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

130.   The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

131.   Through the conduct alleged in detail above and herein, Defendant engaged in unlawful, unfair, deceptive and/or fraudulent business practices in violation of Bus. & Prof. Code § 17200, *et seq.*

### A. *"Unlawful" Prong*

132.   Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq.*

133.   Defendant is alleged to have violated California law by falsely advertising, marketing, promoting, and selling the Class Products as being of U.S. origin without qualification of foreign ingredients and components.

134.   Specifically, by manufacturing, distributing, and/or marketing the Class Products with false, unfair and deceptive claims, Defendant violates California's CLRA, Civil Code § 1750, *et seq.*; California's Made in the USA Statute, Bus. & Prof. Code §§ 17533.7; and the federal Made in USA Labeling Rule, 16 C.F.R. Part 323.

135.   Defendant falsely, unfairly and deceptively represents that the Class Products are of U.S. origin without clear and adequate qualification, despite containing ingredients and/or components that are sourced, grown, or manufactured in foreign countries.

136.   Aside from the unlawful conduct described herein, Defendant has other reasonably available alternatives to advance its business interests, such as

accurately, truthfully, and lawfully marketing, labeling, and selling the Class Products.

137.   Instead, Defendant deliberately and deceptively misled consumers through unlawful and unfair practices for its own economic gain.

138.   Plaintiffs and Class members reserve the right to allege additional violations of law that constitute unlawful business practices or acts, as such conduct is ongoing and continues to this day.

### B. *"Unfair" Prong*

139.   Defendant has engaged in acts of unfair competition prohibited by Bus. & Prof. Code § 17200, *et seq*.

140.   Defendant engaged in a pattern of "unfair" business practices that violate both the letter and the intent of the statutes. Defendant's conduct threatens an incipient violation of the law or violates the policy and spirit of the law by manufacturing, distributing, and/or marketing its products with false, unfair and deceptive claims.

141.   Additionally, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the aforementioned statutes. These practices, which are immoral, unethical, and unscrupulous, have caused harm to consumers and run counter to public policy. The utility of such conduct, if any, is far outweighed by the damage it causes, particularly through the manufacturing, distribution, and/or marketing of the Class Products with unqualified, unfair, and deceptive U.S. origin claims.

142.   Defendant's conduct includes, but is not limited to, manufacturing, distributing, marketing, and/or advertising the Class Products with unqualified, unfair, and deceptive U.S. origin claims. As a result: (1) the injury to consumers was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was one that consumers could not have reasonably avoided.

143.   Without limitation, Defendant's knowing mislabeling and false and unlawful marketing of the Class Products constitute unfair and deceptive business practices, misleading consumers into believing they are purchasing products that are "of U.S. origin without foreign ingredients and components.

144.   Plaintiffs could not have reasonably avoided the resulting injury.

145.   Plaintiffs reserve the right to allege additional conduct that constitutes further unfair business acts or practices.

### C. *"Fraudulent" Prong*

146.   Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs and the Class to believe that the Class Products and/or all its ingredients and components were from in the United States.

147.   Particularly, the Class Products are falsely represented as "Assembled in USA" without clear and adequate qualification, despite the fact that they contain foreign sourced, grown or manufactured ingredients and/or components.

148.   Relying on Defendant's misrepresentations, Plaintiffs purchased the Class Products.

149.   Like Plaintiffs, Class members purchased the Class Products in reliance on Defendant's misrepresentations.

150.   Plaintiffs and the Class are not sophisticated experts in ingredient sourcing, product labeling, marketing practices, or the regulations governing the Class Products.

151.   Plaintiffs and members of the putative Class acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were accurate, truthful and lawful.

152.   Plaintiffs reserve the right to allege additional conduct that constitutes further fraudulent business acts or practices.

### D. *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

153.   Defendant's advertising is unfair, deceptive, untrue and misleading, as it leads consumers to believe that the Class Products are of U.S. origin without clear and adequate qualification, despite containing foreign-sourced, grown, or manufactured ingredients and components.

154.   Plaintiffs, as reasonable consumers, and the public were likely to be, and in fact were, deceived and misled by Defendant's labeling and marketing. They reasonably interpreted Defendant's representations according to their ordinary meaning—that the Class Products were of U.S. origin without foreign ingredients or components.

155.   Plaintiffs and the Class are not sophisticated experts in ingredient sourcing, product labeling, marketing practices, or the regulations governing the Class Products. They acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were accurate, truthful and lawful.

156.   Plaintiffs and the Class lost money or property as a result of Defendant's UCL violations because, at a minimum: (a) they would not have purchased the Class Products on the same terms had they known the true facts about Defendant's representations; (b) they paid a price premium for the Class Products due to Defendant's alleged misrepresentations; and/or (c) the Class Products were not of U.S. origin with U.S.-sourced ingredients and components as represented.

157.   Defendant's alleged unlawful, unfair, and deceptive business practices, along with their unfair, deceptive, untrue, or misleading advertising, present a continuing threat to the public as Defendant continues to engage in unlawful conduct that harms consumers.

158.   Such acts and omissions by Defendant are unlawful, unfair, and/or deceptive, constituting violations of Business & Professions Code §§ 17200, *et seq*. Plaintiffs reserves the right to identify additional violations by Defendant as may be uncovered through discovery.

159.    As a direct and proximate result of the acts and representations described above, Defendant has received and continues to receive unearned commercial benefits at the expense of its competitors and the public.

160.    As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant has been, and will continue to be, enriched by ill-gotten gains from customers, including Plaintiffs, who unwittingly provided money based on Defendant's misrepresentations.

161.    Plaintiffs were harmed because Defendant took Plaintiffs' money through unqualified, false, unfair, and deceptive representations made regarding the Class Products.

162.    The conduct, and inaction, of Defendant, as described above, demonstrates the need for injunctive relief to restrain such acts of unfair competition pursuant to California Business and Professions Code. Unless enjoined by the court, Defendant and its resellers will retain the ability to, and may, continue engaging in unfair and deceptive competition and misleading marketing. As a result, Plaintiffs and the Class are entitled to both injunctive and monetary relief.

163.    Plaintiffs would like to purchase the Class Products again but cannot be certain they will not be misled in the future unless and until Defendant and its resellers make the appropriate changes to the marketing and selling of the Class Products, as requested herein.

164.    Pursuant to Bus. and Prof. Code § 17203, Plaintiffs and the proposed Class are entitled to, and hereby seek, injunctive relief to prevent Defendant and its resellers from continuing the conduct in question. Additionally, Plaintiffs seek public injunctive relief to prevent Defendant and its resellers from marketing and selling products as being of U.S. origin without clear and proper qualification.

165.    In prosecuting this action to enforce important rights affecting the public interest, Plaintiffs seek the recovery of attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## **THIRD CAUSE OF ACTION**

### Violations of California's False Advertising Law ("FAL")

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

166.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein and further allege as follows:

167.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

168.    Defendant's material misrepresentations and omissions, as alleged herein, violate Bus. & Prof. Code § 17500, *et seq*. Defendant knew or should have known that these misrepresentations and omissions were false, unfair, deceptive, and misleading. This includes the unqualified representation that the Class Products were of U.S. origin despite containing foreign-grown, sourced, or manufactured ingredients and components.

169.    Plaintiffs and the Class suffered tangible, concrete injuries as a result of Defendant's actions, as set forth herein, because they purchased the Class Products in reliance on Defendant's misrepresentations.

170.    As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs and members of the Class are entitled to injunctive relief, equitable relief, and restitution.

171.    Further, Plaintiffs and the members of the Class seek an order requiring Defendant to disclose the misrepresentations and request an order awarding

Plaintiffs restitution for the money wrongfully acquired by Defendant through those misrepresentations.

172.    Additionally, Plaintiffs and the members of the Class seek an order requiring Defendant to pay attorneys' fees pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

173.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein and further allege as follows:

174.    Defendant represented to Plaintiffs and similarly situated consumers, through product packaging and marketing materials, that the Class Products were of U.S. origin without any qualification.

175.    Defendant's representations regarding the unqualified U.S. origin of the Class Products constitute affirmations of fact.

176.    Defendant's explicit, unqualified claims that the Class Products are of U.S. origin pertain directly to the nature and composition of the products, forming a fundamental part of the bargain between Defendant and purchasers.

177.    Defendant's statements—featured prominently on the Class Products' PDP and marketing materials—constitute an express warranty regarding the products' U.S. origin, including their ingredients.

178.    Relying on these express warranties, Plaintiffs and Class members purchased the Class Products, believing these warranties.

179.    Defendant breached its express warranties because the Class Products contained foreign-sourced ingredients and components, which were not disclosed with any qualification, contradicting Defendant's representations of an unqualified U.S. origin.

180.    As a result of Defendant's breach, Plaintiffs and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products

or the difference between their actual value and the value they would have held if Defendant's representations regarding the Class Products had been accurate, truthful, and lawful.

181.   Plaintiffs and Class members did not receive the benefit of their bargain and sustained additional injuries, as alleged herein.

182.   Had Plaintiffs and Class members known the true nature of the Class Products, they either would not have purchased the products or would not have paid the price Defendant charged.

183.   Defendant's misrepresentations were a substantial factor in causing Plaintiffs and the Class economic harm.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

184.   Plaintiffs plead this unjust enrichment cause of action in the alternative to contract-based claims.

185.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

186.   Under California law, the elements of unjust enrichment are the receipt of a benefit and the unjust retention of that benefit at the expense of another.

187.   Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendant by purchasing the Class Products, which Defendant misrepresented as to their origin, including their ingredients and components.

188.   Plaintiffs and members of the Class allege that Defendant owes them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

189.   An undue advantage was taken of Plaintiffs' and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendant had no legal right.

190.   Defendant is therefore indebted to Plaintiffs and members of the Class in a specific sum—the amount of money each paid for the Class Products, which Defendant should not retain in equity and good conscience.

191.   Defendant is therefore liable to Plaintiffs and members of the Class for the amount of unjust enrichment.

192.   Defendant's retention of any benefit, whether directly or indirectly collected from Plaintiffs and members of the Class, violates principles of justice, equity, and good conscience.

193.   As a result, Defendant has been and continues to be unjustly enriched.

194.   Plaintiffs and the Class are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs and members of the Class the benefits is has unjustly received.

195.   Defendant accepted and retained such benefits with knowledge that Plaintiffs' and members of the Class's rights were being violated for financial gain. Defendant has been unjustly enriched by retaining the revenues and profits obtained from Plaintiffs and members of the Class, and such retention under these circumstances is both unjust and inequitable.

196.   As a direct and proximate result of Defendant's unlawful practices and the retention of monies paid by Plaintiffs and members of the Class, Plaintiffs and the Class have suffered concrete harm and injury.

197.   Defendant's retention of the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class would be unjust and inequitable.

198.   Plaintiffs and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant, in a manner to be determined by this Court.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

199.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

200.   Defendant represented to the public, including Plaintiffs and the Class, through its marketing, advertising, labeling, and other means, that the Class Products are of U.S. origin without any qualification. These representations are misleading, as Class Products are made with ingredients and components that are sourced from outside the United States.

201.   Plaintiffs allege that Defendant made these negligent, false and deceptive representations with the intent to induce the public, including Plaintiffs and the putative Class members, to purchase the Class Products.

202.   Plaintiffs and other similarly situated individuals saw, believed, and relied upon Defendant's negligent, false, unfair, and deceptive misrepresentations, and purchased the Class Products as a result of this reliance.

203.   At all relevant times, Defendant made the negligent, false, unfair, and deceptive misrepresentations alleged herein, knowing or reasonably having known that such representations were unfair, deceptive, inaccurate, and misleading.

204.   As a direct and proximate result of Defendant's negligent, false, unfair, and deceptive misrepresentations, Plaintiffs and similarly situated consumers were induced to purchase the Class Products, purchase more of them, pay a higher price, or choose them over competitors' products.

205.   Defendant's unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial for the Class Period.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation

206.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

207.   Defendant knowingly represented to Plaintiffs and similarly situated individuals, through product labeling and marketing practices, that the Class

Products were of U.S. origin without any qualification regarding foreign ingredients.

208.   Defendant acted intentionally by willfully and purposefully disseminating misrepresentations about the Class Products through labeling, online and offline marketing, advertising, and social media.

209.   However, as described above, Defendant's representations regarding the Class Products are false, unlawful, unfair, deceptive and/or misleading.

210.   Defendant knew that its representations regarding the Class Products were false, unlawful, unfair, deceptive, and/or misleading, yet continued to make such representations over a period of years.

211.   Defendant further knew that retailers were marketing the Class Products in false or misleading ways, as Defendant designed, manufactured, and affixed the product labeling to the Class Products before supplying them to the retailers.

212.   Plaintiffs and the putative Class members saw, believed, and relied on Defendant's misrepresentations when deciding to purchase the Class Products.

213.   As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and the putative Class members suffered damages in an amount to be determined at trial.

214.   By engaging in the acts described above, Plaintiffs and the putative Class are entitled to recover exemplary or punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief and judgment against Defendant as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;
- Appointment of Plaintiffs as Class Representative;
- Appointment of Plaintiffs' attorneys as Class Counsel;

- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;
- An Order declaring that Defendant's conduct violated the CLRA, California Civil Code §§ 1750, *et seq.*, and awarding injunctive relief pursuant to Cal. Civ. Code § 1780(a) and (b);
- An Order declaring that Defendant's conduct violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; and awarding injunctive relief pursuant to Bus. & Prof. Code § 17203;
- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;
- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains, compelling Defendant to pay restitution to Plaintiffs and all members of the Class, and to restore to Plaintiffs and Class members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive; in violation of laws, statutes, or regulations; or constituting unfair competition, along with pre- and post-judgment interest thereon;
- For pre and post-judgment interest on all amounts awarded;
- For an order of restitution and all other forms of equitable monetary relief, as pleaded, including awarding such relief pursuant to Bus. & Prof. Code § 17535; and/or Bus. & Prof. Code § 17203;
- Actual damages under California Civil Code § 1780(a);
- For public injunctive relief as pleaded or as the Court may deem proper;
- That Defendant be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;
- Punitive damages including under California Civil Code § 1780(a) and/or Cal. Civ. Code § 3294;
- General and compensatory damages in an amount to be determined at trial;

- That Plaintiffs and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5 and California Civil Code § 1780; and

- That Plaintiffs and the members of the Class be granted any other relief the Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

215. Plaintiffs, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: March 20, 2025                    Respectfully submitted,

                    **KAZEROUNI LAW GROUP, APC**

                    By:  _/s/ *Abbas Kazerounian*___
                         Abbas Kazerounian, Esq.
                         *ATTORNEYS FOR PLAINTIFFS*